[Civ. No. 9902. Fourth Dist., Div. One.. Oct. 27, 1970.]

JOMICRA, INC., Plaintiff, Cross-defendant and Respondent, v.
CALIFORNIA MOBILE HOME DEALERS ASSOCIATION et al.,
Defendants, Cross-complainants and Appellants;
RICK BALDINO et al., Defendants and Appellants;
HENRY REICHERT et al., Cross-defendants and Respondents.

COUNSEL

Anton Dumhart for Defendants, Cross-complainants and Appellants.

No appearance for Defendants and Appellants.

Richard A. Perkins, Arnerich, Del Valle & Sinatra, Sheppard, Mullin, Richter & Hampton, and Donald T. Hibner, Jr., for Plaintiff, Cross-defendant and Respondent and for Cross-defendants and Respondents.

## Opinion

**AULT, J.**—Henry and Myron Reichert, partners, are the lessees of an exclusive 189-space mobile home park located in Anaheim, California, called Ponderosa Mobile Home Estates (Ponderosa). On October 1, 1968, before construction of the park was completed, the Reicherts entered into a written agreement with Fred M. Hampton which gave Hampton the exclusive right to maintain a mobile home sales business on the park property. The agreement also gave Hampton the exclusive right to sell mobile homes to the prospective residents of the park for a period of seven months (subject to extensions). It further provided: "Nothing shall prohibit Reichert permitting prospective residents who own approved mobile homes to become residents of the park." In consideration for the exclusive right to sell mobile homes to the prospective and future tenants of Ponderosa, and the right to occupy the sales lot, Hampton agreed to pay the Reicherts 50 percent of the profits from the sale of homes to Ponderosa residents. Hampton assigned his interest in the contract to Jomicra, Inc., a corporation, doing business as Ponderosa Mobile Home Sales (Jomicra), and the Reicherts accepted Jomicra as Hampton's assignee.

It was this contract, and the conduct of the parties pursuant to it, which spawned the present controversy. Soon after its inception, other mobile home dealers came to believe Ponderosa had become a "closed park" and that prospective tenants of Ponderosa were being told they could obtain space in the new park only if they purchased a mobile home through Jomicra. These other dealers banded together to form the California Mobile Home Dealers Association (the Association). Soon Jomicra and the Reicherts became convinced the Association, and some of its individual members, were influencing, or attempting to influence, those engaged in furnishing necessary services to mobile home dealers and parks not to deal with Jomicra or Ponderosa under threat of boycott.

As a result, Jomicra brought an action in the Orange County Superior Court seeking an injunction and damages for unfair competition, wrongful interference with contractual and business relations, and restraint of trade against the Association and certain individuals engaged in the mobile home sales business. The Association and Frank Bond, one of the individuals originally sued, cross-complained against Jomicra also seeking an injunction and damages for restraint of trade. The cross-complaint named the Reicherts and Hampton as additional cross-defendants. Both sides filed orders to show cause for preliminary injunctions which were consolidated for hearing. After a hearing, Jomicra's application for a preliminary injunction was granted and the Association and the individually sued defendants were enjoined from "directly or indirectly interfering, or attempting or threaten-

ing to interfere, with the business of . . . Jomicra . . . , by imposing on any third person engaged in business, as a condition of doing business with members of the defendant Association, that such third person cease or refrain from doing business with plaintiff." The cross-complainants' application for a preliminary injunction was denied. The Association and the individually named defendants have appealed from the order granting Jomicra an injunction against them, and the Association and Bond have appealed from the order denying an injunction against Jomicra on their cross-complaint.

■ On January 2, 1970, respondents Reichert, who appeared separately at the trial and on appeal, moved to dismiss that part of the appeal taken from the order denying a preliminary injunction to the Association and Bond on the cross-complaint. We set the motion for hearing on the same day the case came on for oral argument on the merits, heard argument on both the motion and the merits, and ordered both matters submitted for decision.

The motion to dismiss is based upon the declaration of Henry Reichert which incorporates a document signed on October 1, 1969 by the Reicherts, Hampton and Jomicra terminating the October 1, 1968 agreement giving Hampton and Jomicra the exclusive right to sell mobile homes to prospective Ponderosa tenants. Since the agreement upon which the request for injunctive relief is based has been terminated, the Reicherts argue the question of whether the trial judge properly denied the application for a preliminary injunction against its implementation has become moot.

In opposition to the motion, appellants contend the appeal should not be dismissed because the cross-complaint raises the issue of damages which has not yet been determined. The objection overlooks the fact the entire case is not on appeal. The issue of damages has not been determined by the trial court and is not before this court on appeal. Dismissal of the appeal from the order denying the preliminary injunction on the ground the *injunctive issue* has become moot would not result in the dismissal of the case in the trial court, nor would it affect the trial court's duty to hear and determine the damage issue on the merits.

Appellants next contend: "Respondents' mere voluntary discontinuance of wrongful conduct does not put to rest the controversy of tying arrangements, that is, the growing practice of some owners of mobile home parks in Orange County to tie the leasing of spaces in their parks to the mandatory condition that mobile homes be purchased only from those retail mobile home dealers as dictated by the park owners. . . . The issue of closed parks would again rise to the surface by respondents merely entering

into a subsequent agreement similar to the agreement allegedly rescinded, and thereafter the issue would again become moot by a similar rescission." We regard the contention as an invitation to write an advisory opinion and decline to accept it. Termination of the contract and the conduct thereunder which appellants contend to be wrongful, may not end the entire controversy between these parties, but it may well render the injunctive aspects of the controversy moot.

Appellants' cross-complaint is aimed at the October 1, 1968, agreement and respondents' conduct in relation to it. Both the request for injunctive relief and the claim for damages are premised upon the contention the provision of the contract giving Jomicra the exclusive right to sell mobile homes to the proseptive tenants of Ponderosa and respondents' conduct in requiring prospective tenants to purchase mobile homes from Jomicra in order to obtain space in the park constitute a tying arrangement and an illegal restraint of trade in violation of the Cartwright Act (Bus. & Prof. Code, § § 16700-16758).

By its terms, the agreement of October 1, 1968, expired in May of 1969. It was extended beyond that date by agreement of the parties, but it also provided for termination at any time upon 30 days' written notice. Appellants do not seriously contend the agreement has not been terminated and is no longer operative insofar as Ponderosa is concerned. Instead they urge respondents, or one of them, or even other third persons, are engaging in similar practices elsewhere and will continue to do so, unless we reverse the order denying the preliminary injunction. Such matters were not within the framework of the case presented to the trial court and certainly are not within the context of this appeal.

As appellants conceded at oral argument of the motion to dismiss, the October 1, 1968 agreement was a short-term affair, the objectives of which were completed before the appellate process could be brought to bear. When the 189 spaces in the mobile home park were filled, all the acts which cross-complainants sought to enjoin had been completed. Were we to reverse the order denying appellants' application for a preliminary injunction, the superior court would have no function to perform as a consequence of the reversal because what was sought to be enjoined has already been done. Certainly appellants could not urge that court to order respondents to stop performing a contract where performance has already been completed and the contract terminated. (*Lenahan* v. *City of Los Angeles,* 14 Cal.2d 128, 132-134 [92 P.2d 1014]; *Foster* v. *Smith,* 115 Cal. 611, 612-613 [47 P. 591].)

Even if events and the passage of time had not rendered injunctive relief inappropriate and ineffective, this court could not properly write a

definitive opinion upon the merits of the controversy between the parties on an appeal from an order granting or denying a preliminary injunction. In *French Art Cleaners* v. *St. Bd. etc. Cleaners,* 91 Cal.App.2d 890, at page 897 [206 P.2d 25], the court stated: "The effect of a preliminary injunction is explained in 14 California Jurisprudence, pages 184-5 as follows: 'The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or should not be restrained from exercising the rights claimed by him. Indeed, when the cause is finally tried it may be found that the facts require a decision against the party prevailing on the preliminary application. *It therefore follows that an appellate court in passing upon the propriety of the issuance or dissolution of a preliminary injunction will not determine the merits of the case in advance of the trial,* and its decision as to the propriety of granting the writ is no intimation of what the judgment of the lower court should be at the final hearing; nor is it the law of the case in a subsequent appeal from the final judgment on the merits.' (Emphasis added.)" (See also *Paul* v. *Allied Dairymen, Inc.,* 209 Cal.App.2d 112, 121 [25 Cal.Rptr. 595], where the above quote appears in full.)

The provision of the October 1, 1968 agreement granting Jomicra the exclusive right to sell mobile homes to prospective Ponderosa tenants, coupled with appellants' allegation respondents required prospective tenants to purchase mobile homes from Jomicra as a condition to obtaining space in the park, raises a serious issue of illegal conduct to restrain trade and competition. But the issue has not been determined on the merits by the trial court. Appellants' cause of action for damages, based upon the same claimed illegal conduct, remains as a proper vehicle to obtain that determination.

Under ordinary circumstances, hearings held to determine whether a preliminary injunction should issue are not to be compared with full trials. This case presents no exception. The hearing held was not extensive and the trial court's determination to issue a preliminary injunction on the complaint and not to issue one on the cross-complaint was based upon declarations filed, supplemented by brief oral testimony. The record is a meager one, not suitable as a basis for a determination of the issues on the merits.

■ The preliminary injunction, which prohibits the Association and its members from imposing a secondary boycott on Jomicra, is not moot, and no motion has been made to dismiss that aspect of the appeal. Appellants' sole contention is the trial court should not have issued the preliminary injunction because Jomicra itself was guilty of improper conduct con-

nected with the controversy. The "clean hands doctrine" has no applicability to either side of this controversy. The maxim "he who comes into equity must come with clean hands" should not be invoked when the act sought to be enjoined is against public policy. (*Kofsky* v. *Smart & Final Iris Co.,* 131 Cal.App.2d 530, 532 [281 P.2d 5]; 27 Am.Jur.2d, Equity, § 136 p. 669.) Group boycotts are illegal per se and against public policy. (Bus. & Prof. Code, § 16720; *People* v. *Inland Bid Depository,* 233 Cal.App.2d 851, 860 [44 Cal.Rptr. 206]; *Klor's, Inc.* v. *Broadway-Hale Stores, Inc.,* 359 U.S. 207, 212 [3 L.Ed.2d 741, 744, 79 S.Ct. 705, 709].)

Neither this court's rulings on appeal nor the trial court's orders granting and denying the respective applications for preliminary injunctions are final adjudications which bind the court at trial. (*Bomberger* v. *McKelvey,* 35 Cal.2d 607, 612 [220 P.2d 729]; *State Board of Barber Examiners* v. *Star,* 8 Cal.App.3d 736, 740 [87 Cal.Rptr. 450]; *French Art Cleaners* v. *St. Bd. etc. Cleaners, supra,* 91 Cal.App.2d 890, 897.)

The order granting the preliminary injunction is affirmed. The appeal from the order denying the preliminary injunction is dismissed.

Brown, P. J., and Coughlin, J., concurred.